The Honorable Brian A. Tsuchida

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL G. HURLEY,<br><br>Defendant. | NO. MJ 15-437<br><br>**COMPLAINT**<br><br>Count 1<br>18 U.S.C. § 201(b)(2)<br>(Soliciting and Agreeing to Receive a Bribe by a Public Official)<br><br>Counts 2 and 3<br>18 U.S.C. § 201(b)(2)<br>(Receiving a Bribe by a Public Official) |

BEFORE the Honorable Brian A. Tsuchida, United States Magistrate Judge, United States Courthouse, Seattle, Washington

The undersigned complainant being duly sworn states:

### COUNT 1
**(Soliciting And Agreeing To Receive a Bribe By A Public Official)**

1. On or about September 11, 2015, at Seattle, in the Western District of Washington, the defendant, PAUL G. HURLEY, a public official, directly and indirectly did corruptly demand, seek, and agree to receive and accept something of value personally, in return for being influenced in the performance of an official act, and to be

Complaint/Hurley - 1

induced to do or omit any act in violation of his official duty; that is $20,000 in connection with the conduct of his duties as an Internal Revenue Service ("IRS") Revenue Agent.

2. From July 2015 through the present, PAUL G. HURLEY was a public official, employed in the State of Washington as an IRS Revenue Agent.

3. From July 2015 through the present, PAUL G. HURLEY's official duties included conducting examinations of taxpayers' tax filings to determine whether the taxpayers had correctly reported and paid their tax liability to the IRS.

4. In July 2015, Taxpayer A received official correspondence from the IRS indicating that Taxpayer A had been selected for an audit of his business, with the IRS point of contact for the audit being Revenue Agent PAUL G. HURLEY.

5. Thereafter and on multiple occasions, PAUL G. HURLEY met with Taxpayer A at Taxpayer A's place of business to conduct the audit.

6. During the last audit meeting on September 11, 2015, PAUL G. HURLEY provided Taxpayer A the results of the audit. PAUL G. HURLEY claimed to have saved Taxpayer A over $1 million. PAUL G. HURLEY made a further comment that he (PAUL G. HURLEY) was living paycheck to paycheck. PAUL G. HURLEY had previously talked about being unhappy at the IRS. Taxpayer A suspected PAUL G. HURLEY was proposing that Taxpayer A make a personal payment to PAUL G. HURLEY. In response, Taxpayer A rubbed his fingers together and looked at PAUL G. HURLEY to see if that was PAUL G. HURLEY's intention. PAUL G. HURLEY responded by stating "20," which Taxpayer A understood to mean $20,000. Taxpayer A asked PAUL G. HURLEY how he wanted the payment. PAUL G. HURLEY responded that he wanted Taxpayer A to pay off PAUL G. HURLEY's student loans in small amounts over time. Taxpayer A told PAUL G. HURLEY, in sum and substance, that Taxpayer A did not believe that was a good idea. PAUL G. HURLEY then told Taxpayer A he wanted cash. Taxpayer A suggested that Taxpayer A and PAUL G. HURLEY meet on September 16, 2015, at a Starbucks to make the payment. PAUL G.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

HURLEY agreed, and told Taxpayer A not to tell anyone, not even Taxpayer A's business partner.

All in violation of Title 18, United States Code, Section 201(b)(2).

## COUNT 2
**(Receiving A Bribe By A Public Official)**

7. The allegations contained in paragraphs one through six are realleged and incorporated as though fully set forth in this paragraph. On or about September 16, 2015, at Seattle, in the Western District of Washington, the defendant, PAUL G. HURLEY, a public official, directly and indirectly did corruptly receive and accept something of value personally, in return for being influenced in the performance of an official act, and to be induced to do or omit any act in violation of his official duty; that is $5,000 in connection with the conduct of his duties as an IRS Revenue Agent.

All in violation of Title 18, United States Code, Section 201(b)(2).

## COUNT 3
**(Receiving A Bribe By A Public Official)**

8. The allegations contained in paragraphs one through six are realleged and incorporated as though fully set forth in this paragraph. On or about September 21, 2015, in the Western District of Washington, the defendant, PAUL G. HURLEY, a public official, directly and indirectly did corruptly receive and accept something of value personally, in return for being influenced in the performance of an official act, and to be induced to do or omit any act in violation of his official duty; that is $15,000 in connection with the conduct of his duties as an IRS Revenue Agent.

All in violation of Title 18, United States Code, Section 201(b)(2).

//
//

The undersigned complainant, being duly sworn, states:

1. I, Mark J. Nakatsu, am a Special Agent for the Federal Bureau of Investigation ("FBI"). I have been a Special Agent for the past 27 years. For approximately 21 of those years, I have investigated and received extensive training in various white collar crime matters. During my career, I have investigated cases involving bribery and corruption by federal, state and local public officials. I am currently assigned to a squad that is in part responsible for the investigation of public corruption. The information in this affidavit is based on my personal knowledge, review of documents and other evidence, and information received from other FBI Special Agents and Special Agents of the United States Treasury Department, Treasury Inspector General for Tax Administration ("TIGTA").

2. I believe that the investigation leading to the filing of this affidavit has established probable cause to believe that PAUL G. HURLEY has solicited and agreed to receive a bribe and received bribes, all in violation of Title 18, United States Code, Section 201(b)(2).

3. Because this Complaint is submitted for the limited purpose of establishing probable cause, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that PAUL G. HURLEY has committed the offense of Soliciting and Agreeing to Receive a Bribe by a Public Official, in violation of Title 18, Section 201(b)(2), and Receiving a Bribe by a Public Official, in violation of Title 18, United States Code, Sections 201(b)(2).

### DETAILS OF INVESTIGATION

4. The FBI and TIGTA are conducting a criminal investigation into allegations that IRS internal revenue agent PAUL G. HURLEY solicited and received a bribe in return for being influenced in the performance of an official act in connection with the conduct of his duties as an IRS Internal Revenue Agent. The investigation has revealed that PAUL G. HURLEY solicited and accepted money in exchange for

providing low tax assessments on an IRS tax audit of a taxpayer (referred to as "Taxpayer A").

5. PAUL G. HURLEY has been employed as revenue agent with the IRS since June 22, 2009, and he is currently stationed in the IRS's Seattle, Washington office. IRS revenue agents are assigned to conduct IRS tax audits on IRS tax returns as part of their official duties. As part of the audit process, IRS Revenue Agents conduct examinations of taxpayers' tax filings to determine whether the taxpayers correctly reported and paid their tax liability to the IRS. If an IRS Revenue Agent receives cash, the Revenue Agent is instructed to have an IRS employee from another division process the cash and provide a receipt.

6. On September 15, 2015, Taxpayer A was interviewed by Special Agents of the FBI and TIGTA. Taxpayer A stated that he is part owner of a business that operates recreational marijuana shops and medical marijuana dispensaries in the State of Washington.

**The Start of the Audit**

7. Taxpayer A said that on July 13, 2015, he received official notice of an IRS audit of his business's 2013 federal return. Taxpayer A provided Special Agents the notification letter, and I have reviewed it. The letter appears to be signed by PAUL G. HURLEY, whose name is listed as the "person to contact." After receiving the notice, Taxpayer A called PAUL G. HURLEY on the number listed on the notification to set up a meeting date for the audit.

**The Audit Meetings**

8. Taxpayer A said he had his initial meeting with PAUL G. HURLEY on July 28, 2015, at one of Taxpayer A's business locations. Taxpayer A advised that during the audit meeting, PAUL G. HURLEY mentioned Section 280E of the Internal Revenue Code. Title 26, United States Code, Section 280E, states that no deduction or credit is allowed for a business whose activities consist of trafficking in illegal substances. Thereafter, on multiple occasions, including the dates set forth below,

Taxpayer A met with PAUL G. HURLEY at Taxpayer A's place of business while PAUL G. HURLEY conducted his examination.

9. On July 29, 2015, Taxpayer A met with PAUL G. HURLEY for the official start of the audit. Taxpayer A said PAUL G. HURLEY went over the formalities of the IRS audit, and noted that Taxpayer A would be taxed on the business's gross revenue with limited deductions.

10. Taxpayer A described PAUL G. HURLEY as "chummy." In conversation, Taxpayer A asked PAUL G. HURLEY how he ended up at the IRS when PAUL G. HURLEY had a law degree. PAUL G. HURLEY said he needed a job and the IRS would pay off his student loans. Taxpayer A said that PAUL G. HURLEY seemed lenient on the IRS audit. Taxpayer A felt PAUL G. HURLEY had sympathy for injustices in the marijuana industry, and Taxpayer A felt he was lucky that PAUL G. HURLEY was being lenient.

11. On August 6, 2015, during another meeting between Taxpayer A and PAUL G. HURLEY, the audit was expanded from tax year 2013 to include tax year 2014.

12. On September 9, 2015, during a meeting between PAUL G. HURLEY and Taxpayer A, PAUL G. HURLEY ran out of tobacco. Taxpayer A purchased tobacco for PAUL G. HURLEY, but PAUL G. HURLEY did not reimburse him. In addition, PAUL G. HURLEY told Taxpayer A that he had back pain from hiking, so Taxpayer A offered cannabis lotion, which PAUL G. HURLEY used.

**The September 11th Solicitation**

13. Taxpayer A further stated that the last audit meeting was held on September 11, 2015. During that meeting, PAUL G. HURLEY gave Taxpayer A the results of the audit on a Form 4549, Income Tax Examination Changes. PAUL G. HURLEY told Taxpayer A that he could accept the amount listed on the form, or he could appeal it. Taxpayer A told PAUL G. HURLEY he agreed to the amount and signed the form. According to Taxpayer A, PAUL G. HURLEY also signed the Form 4549. PAUL G.

HURLEY then gave Taxpayer A a copy of Form 4549, which PAUL G. HURLEY had signed. Taxpayer A provided the investigating Special Agents with this copy containing what appears to be PAUL G. HURLEY's signature. I have compared the signatures on the notification letter and the Form 4549 provided by Taxpayer A, and the signatures appear to match. The Form 4549 that Taxpayer A provided to the Special Agents had a proposed amount due of $122,277.20 for 2013 and $169,898.21 for 2014.

14. I have reviewed the Form 4549, which includes the following statement, among others:

> "Consent to Assessment and Collection – I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. *It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations.*" (emphasis added).

15. During the investigation, an IRS supervisor was interviewed and stated that when a Revenue Agent concludes a case and presents the taxpayer with a proposed assessment it is done on an IRS Form 4549. If the revenue agent signs the form, and the taxpayer signs the form in agreement with the assessment, the Form 4549 is then submitted by the Revenue Agent to an IRS manager for review. The proposed action on the Form 4549 is not finalized or assessed until an IRS manager approves the Form 4549, and a case processing unit in an IRS Service Center also reviews the recommended action listed on the Form 4549 and approves the assessment.

16. Shortly after the Form 4549 was signed, Taxpayer A asked PAUL G. HURLEY if Taxpayer A could ask PAUL G. HURLEY a question "off the record." PAUL G. HURLEY said yes, and Taxpayer A asked PAUL G. HURLEY a tax question involving an unrelated business. Immediately thereafter, PAUL G. HURLEY asked Taxpayer A if he could ask a question "off the record." Taxpayer A told PAUL G.

HURLEY yes, and the two went outside of the store. At that time, Taxpayer A expected PAUL G. HURLEY to ask for a job.

17. Taxpayer A reported that PAUL G. HURLEY said that he (PAUL G. HURLEY) had saved Taxpayer A over $1 million in the audit. PAUL G. HURLEY then said that he (PAUL G. HURLEY) was living paycheck to paycheck. According to Taxpayer A, PAUL G. HURLEY had previously talked about being unhappy at the IRS. Taxpayer A suspected PAUL G. HURLEY was proposing that Taxpayer A make a personal payment to PAUL G. HURLEY. Taxpayer A rubbed his fingers together and looked at PAUL G. HURLEY to see if that was PAUL G. HURLEY's intention. PAUL G. HURLEY responded by stating "20," which Taxpayer A understood to mean $20,000

18. Taxpayer A asked PAUL G. HURLEY how he wanted the payment. PAUL G. HURLEY responded that he wanted Taxpayer A to pay off PAUL G. HURLEY's student loans in small amounts over time. Taxpayer A told PAUL G. HURLEY that Taxpayer A did not think that was a good idea. PAUL G. HURLEY then said he wanted cash. Taxpayer A suggested meeting at a Starbucks in Seattle, Washington, at 8:00 a.m. on September 16, 2015, to make the payment. PAUL G. HURLEY agreed, and told Taxpayer A not to tell anyone, not even Taxpayer A's business partner.

19. During the interview with the Special Agents, Taxpayer A insisted he neither indicated nor hinted that he would pay PAUL G. HURLEY to lower his tax debt throughout the course of his dealings with PAUL G. HURLEY.

**The September 16, 2015 Payment**

20. After Taxpayer A met with the Special Agents in the afternoon September 15, 2015, Taxpayer A agreed to meet with PAUL G. HURLEY at the prearranged time on September 16, 2015 under observation by Special Agents. I obtained approval to conduct electronic monitoring of the meeting. On September 16, 2015, Taxpayer A was provided with $5,000 cash by FBI Special Agents to provide to PAUL G. HURLEY. Taxpayer A secured the money in a manila envelope in the presence of FBI Special

Agents. An audio recording device was placed on Taxpayer A and activated prior to his meeting with PAUL G. HURLEY.

21. Special Agents, who were also utilizing a video recording device, saw Taxpayer A sitting at a table inside the Starbucks located in Seattle, Washington. At approximately 7:30 am, Taxpayer A held up the manila envelope containing the $5,000 cash he had been provided for the Special Agents conducting surveillance to see, and Taxpayer A placed the envelope in a newspaper and placed both items on the table in front of him.

22. At approximately 7:51 a.m., Special Agents observed a Honda Accord 4-door sedan, Washington license plate ARE919, pull into the parking lot for the Starbucks. The registered owner of that vehicle is PAUL G. HURLEY.

23. At approximately 7:53 a.m., Special Agents observed PAUL G. HURLEY exit his car and walk into the Starbucks wearing a backpack. At approximately 7:56 a.m., Special Agents observed PAUL G. HURLEY sit down at a table with Taxpayer A where they engaged in conversation.

24. At approximately 8:02 a.m., Special Agents observed PAUL G. HURLEY and Taxpayer A stand up from the table. Taxpayer A put on his jacket. PAUL G. HURLEY sat back down, opened his backpack, took the envelope of money inside the newspaper on the table and placed both items together inside of his backpack. PAUL G. HURLEY stood up again and both he and Taxpayer A departed the Starbucks. PAUL G. HURLEY and Taxpayer A then began smoking cigarettes outside of the entrance to the Starbucks while they engaged in further conversation.

25. At approximately 8:11 a.m., Special Agents observed PAUL G. HURLEY walk away from Taxpayer A. PAUL G. HURLEY put the backpack containing the envelope of money inside the trunk of his Honda Accord.

26. Special Agents debriefed Taxpayer A about the meeting with PAUL G. HURLEY and also reviewed the electronic recording of the same. Taxpayer A advised he told PAUL G. HURLEY he was worried about getting into trouble for making the

payment. PAUL G. HURLEY said, in sum and substance, "You're not in trouble. I brought this up to you. I'm the one that is going to get into trouble. You didn't bring it to me. We're fine. It's good."

27. During the debriefing, Taxpayer A advised he asked PAUL G. HURLEY about how the completed IRS audit process was done. An FBI Special Agent told me that on the recording, PAUL G. HURLEY stated: "I, I finished...I finished closing everything out, got it all wrapped up and stuck it in my manager's box yesterday...late yesterday"; "She's not in today...which is good...so that means the afternoon manager comes in and reviews in...and that's just rubberstamping it. So there's no problem there. It...that's good...it gets forwarded up."

28. Also during the debriefing, Taxpayer A stated he told PAUL G. HURLEY there was only $5,000 in there as partial payment. An FBI Special Agent told me that on the recording, Taxpayer A stated: "I gotta split...this is the other part I was gonna tell you, I'll give you 5 [thousand dollars] today, don't freak out on me...I'm gonna give you more. Can you give me until Monday and I'll get you the rest? Part of me was scared that if I hand you 20k... I'm like is this guy going to get fucking pulled over and freak out." On the recording, PAUL G. HURLEY replied: "I'll just throw it in the trunk and no record or nothing." On the recording, Taxpayer A stated: "Monday, I'll get you the rest 100%." In the debriefing, Taxpayer A stated he and PAUL G. HURLEY plan to meet again at the same Starbucks location on Monday, September 21, 2015, at 8:00 am.

29. I was told by the Special Agent reviewing the audio recording that portions of the recording were difficult to hear because of background noise. There is also a portion of the recording where Taxpayer A and PAUL G. HURLEY both leaned forward and whispered conversation.

**The September 21, 2015 Payment**

30. On September 21, 2015, at approximately 8:00 a.m., Taxpayer A met with PAUL G. HURLEY inside of Taxpayer A's vehicle in the parking lot of the Seattle Starbucks where the two had previously met on September 16, 2015. I had approval to

conduct electronic monitoring of the meeting. On September 21, 2015, Taxpayer A was provided with $15,000 cash by TIGTA Special Agents. Taxpayer A secured the money in a manila envelope in the presence of TIGTA Special Agents. An audio recording device was placed on Taxpayer A, along with audio and video recording devices that were placed in his vehicle. All of the devices were activated prior to Taxpayer A's meeting with PAUL G. HURLEY.

31. At approximately 7:55 a.m., Special Agents observed PAUL G. HURLEY's Honda Accord 4-door sedan bearing Washington license plate ARE919 pull into the parking lot of the Starbucks. PAUL G. HURLEY proceeded to grab his backpack and then get inside of Taxpayer A's vehicle.

32. Special Agents observed Taxpayer A meeting with PAUL G. HURLEY inside of Taxpayer A's vehicle. Special Agents were also able to listen to the conversation between Taxpayer A and PAUL G. HURLEY on radios, but portions of the conversation could not be heard due to background noise and static. At approximately 8:05 a.m., Taxpayer A was overheard making the payment to PAUL G. HURLEY. Taxpayer A was overheard telling PAUL. G. HURLEY that he has a friend going through a similar audit process and that Taxpayer A hoped that the friend could have someone like PAUL G. HURLEY. PAUL G. HURLEY replied, in sum and substance, "There's no one like me."

33. At approximately, 8:10 a.m., PAUL G. HURLEY exited Taxpayer A's vehicle carrying a backpack. Special Agents then arrested PAUL G. HURLEY without incident, pursuant to a probable cause arrest authorized by the United States Attorney's Office for the Western District of Washington. Incident to arrest, Special Agents searched PAUL G. HURLEY's person and backpack. Specials Agents located the manila envelope containing $15,000 cash inside of PAUL G. HURLEY's backpack. Special Agents also located four (4) U.S. Twenty Dollar bills inside of PAUL G. HURLEY's wallet. Three (3) of the serial numbers for U.S. Twenty Dollar bills matched the serial

numbers of the U.S. Twenty Dollar bills paid by Taxpayer A to PAUL G. HURLEY during the September 16, 2015 bribe payment.

34. Special Agents debriefed Taxpayer A about the meeting with PAUL G. HURLEY. Taxpayer A advised that when it came time to make the $15,000 bribe payment, Taxpayer A indicated to PAUL G. HURLEY that the payment was under the seat. PAUL G. HURLEY reached under the passenger seat and grabbed the manila envelope. Taxpayer A and PAUL G. HURLEY talked about other things and then concluded their meeting. As PAUL G. HURLEY was about to exit the vehicle, Taxpayer asked PAUL G. HURLEY, "Did you grab that?" PAUL G. HURLEY replied to Taxpayer A, "yes."

## CONCLUSION

35. The above facts are true and correct to the best of my knowledge and belief. Based upon the above, I believe there is probable cause to believe that PAUL G. HURLEY has committed acts in violation of Title 18, United States Code, Section 201(b)(2) as alleged in this Complaint and Affidavit.

_____
MARK J. NAKATSU
Special Agent
Federal Bureau of Investigation

Based upon the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

Dated this 21 day of September, 2015.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge