The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR15-336 JCC |
| Plaintiff, | **UNITED STATES'** |
| | **TRIAL BRIEF** |
| v. | |
| PAUL G. HURLEY, | |
| Defendant. | |

The United States of America respectfully submits this Trial Brief.

## I.    PROCEDURAL BACKGROUND

On September 21, 2015, defendant Paul G. Hurley was arrested and charged by a criminal Complaint with one count of Soliciting and Agreeing to Receive a Bribe by a Public Official, and two counts of Receiving a Bribe by a Public Official, in violation of Title 18, United States Code, Section 201(b)(2).  On October 14, 2015, a federal grand jury sitting in the Western District of Washington returned a three-count Indictment charging defendant Hurley with the same offenses.

Defendant's trial is set to commence on February 8, 2016, at 9:30 a.m.  At trial, the United States will be represented by Assistant United States Attorneys Justin W. Arnold and Francis Franze-Nakamura.  Defendant will be represented by John Henry

UNITED STATES' TRIAL BRIEF - 1
*United States v. Hurley*, CR15-336 JCC

Browne and Michael Lee.  The United States expects to call approximately seven witnesses, and to introduce approximately less than 50 exhibits.  The United States anticipates that it will be able to present its case-in-chief in approximately two to three days, depending on the amount of cross-examination by the defense.

## II.     ELEMENTS OF THE OFFENSES

**Soliciting, Agreeing to Receive, and Receiving a Bribe by a Public Official**

The elements of Soliciting, Agreeing to Receive, and Receiving a Bribe by a Public Official as charged in Counts 1 through 3 of the Indictment, in violation of Title 18, United States Code, Section 201(b)(2), are:

First, the defendant was a public official;

Second, the defendant solicited, received, or agreed to receive something of value, in return for being influenced in the performance of an official act or being persuaded to do or not do an act in violation of defendant's official duty;

Third, the defendant acted corruptly, that is, intending to be influenced in the performance of an official act or to do or omit to do an act in violation of the defendant's official duty.

Title 18, United States Code, Section 201(a)(1) defines a "public official" as a Member of Congress, Delegate or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of such department, agency, or branch of Government.

Title 18, United States Code, Section 201(a)(3) defines "official act" as any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may be law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.  At trial,

the United States will argue that the "official act" that was the subject of the bribe was defendant Hurley's preparation of his audit report and the submission of his audit report to his managers.

### III.    FACTS

The United States anticipates that the evidence at trial will show the following:

On June 22, 2009, defendant Hurley began working at the Internal Revenue Service ("IRS") as revenue agent.  From that date through September 24, 2015, defendant Hurley was stationed in the IRS's Seattle, Washington office.  IRS revenue agents are assigned to conduct IRS tax audits on IRS tax returns as part of their official duties.  As part of the audit process, IRS Revenue Agents conduct examinations of taxpayers' tax filings to determine whether the taxpayers correctly reported and paid their tax liability to the IRS.  If an IRS Revenue Agent receives cash, the Revenue Agent is instructed to have an IRS employee from another division process the cash and provide a receipt.

Throughout his employment as an IRS revenue agent, defendant Hurley received ethics training which included a discussion on the prohibition, with limited exceptions, against soliciting or accepting any gift or other item of monetary value from any person seeking official action from the IRS or whose interests may be substantially affected by the performance or nonperformance of defendant Hurley's duties.  On or about July 20, 2015, shortly after he began his examination of Have a Heart Compassion Care, Inc. ("Have a Heart"), defendant Hurley received his annual ethics training, including the prohibition of gifts from outside sources and seeking outside employment.

On July 1, 2015, just days before he began his examination of Have a Heart, defendant Hurley's second-level supervisor, Diane Wittman, gave defendant Hurley a letter notifying him that the IRS was proposing to remove him from the IRS or otherwise discipline him.  This proposed removal or discipline resulted from defendant Hurley's unauthorized access to taxpayer data on three occasions in 2014, on January 23, 2014,

UNITED STATES' TRIAL BRIEF - 3
*United States v. Hurley*, CR15-336 JCC

1  October 14, 2014, and October 16, 2014, and his lack of candor in the investigation of his
2  unauthorized access.

3  **The Have a Heart Examination**

4  On or about July 6, 2015, defendant Hurley mailed an official notice to Have a
5  Heart, a medical marijuana business, to the attention of Ryan Kunkel.  The July 6th
6  notice informed Mr. Kunkel that Have a Heart's federal tax return for the year ending
7  December 31, 2013, had been selected for examination.  The notice, which was signed by
8  defendant Hurley, directed Mr. Kunkel to contact defendant Hurley to discuss the
9  pending examination.  According to his internal IRS Activity Record, around the time
10 defendant Hurley mailed the notice to Have a Heart, defendant Hurley conducted
11 research concerning tax issues related to medical marijuana businesses, including the
12 applicability of Internal Revenue Code ("IRC") Section 280E.  Section 280E of the IRC
13 prohibits a business trafficking in illegal substances from deducting normal operating
14 expenses when calculating its income tax.

15 As directed by the notice of examination, in the middle of July 2015, Mr. Kunkel
16 contacted defendant Hurley to set up a date for the beginning of the examination.  On
17 July 28, 2015, defendant Hurley met with Mr. Kunkel at Have a Heart's office on Aurora
18 Boulevard in Seattle, Washington, to conduct a preliminary interview, and the formal
19 audit began the next day.  According to Mr. Kunkel, during these early meetings,
20 defendant Hurley went over the formalities of the examination and told Mr. Kunkel that
21 Have a Heart would be taxed on the business's gross revenue with limited deductions.  In
22 addition to the July 29th meeting, defendant Hurley and Mr. Kunkel met at Have a
23 Heart's offices on at least three other occasions during the examination, including August
24 6, 2015, and September 9 and 11, 2015.  At some point during the course of the
25 examination, defendant Hurley informed Mr. Kunkel that the examination would be
26 expanded to include Have a Heart's 2014 tax return since the 2014 return would also
27 include Section 280E adjustments.

28
UNITED STATES' TRIAL BRIEF - 4
*United States v. Hurley*, CR15-336 JCC

The last examination meeting between defendant Hurley and Mr. Kunkel took place on September 11, 2015 at Have a Heart's offices.  During this meeting, defendant Hurley gave Mr. Kunkel the results of the examination on a Form 4549, Income Tax Examination Changes.  Defendant Hurley told Mr. Kunkel that he could accept the amount listed on the form, or he could appeal it.  Mr. Kunkel told defendant Hurley he agreed to the amount and signed the form, which defendant Hurley also signed.  The Form 4549 includes the following statement, among others:

> "Consent to Assessment and Collection – I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report.  Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law.  It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations."

According to Diane Wittman, defendant Hurley's second-level supervisor at the IRS, when a revenue agent concludes a case and presents the taxpayer with a proposed assessment it is done on an IRS Form 4549.  If the revenue agent signs the form, and the taxpayer signs the form in agreement with the assessment, the Form 4549 is then submitted by the revenue agent to an IRS manager for review along with additional paperwork related to the audit.  The proposed action on the Form 4549 is not finalized or assessed until an IRS manager approves the Form 4549, and a case processing unit in an IRS Service Center also reviews the recommended action listed on the Form 4549 and approves the assessment.

Ms. Wittman will also testify about the procedures a revenue agent takes to complete and submit an audit to an IRS manager for review.  These procedures include the assembly of the agent's "Examination Workpapers" which contain the agent's analysis and other documents related to the audit.  Using her 28 years of experience with the IRS, Ms. Wittman will briefly explain the documents contained in Paul Hurley's

UNITED STATES' TRIAL BRIEF - 5
*United States v. Hurley*, CR15-336 JCC

1  examination workpapers.  She will also highlight the portions of the workpapers that

2  indicate when defendant Hurley submitted the workpapers for review by a manager.

3  Shortly after defendant Hurley and Mr. Kunkel signed the Form 4549, Mr. Kunkel

4  asked defendant Hurley if he could ask defendant Hurley a question "off the record."

5  Defendant Hurley said yes, and Mr. Kunkel asked defendant Hurley a tax question

6  involving an unrelated business.  Immediately thereafter, defendant Hurley asked Mr.

7  Kunkel if he could ask a question "off the record."

8  According to Mr. Kunkel, defendant Hurley said that he had saved Mr. Kunkel

9  over $1 million in the examination.    According to Mr. Kunkel, defendant Hurley had

10  previously talked about his student loan debt and being unhappy at the IRS.  According to

11  Mr. Kunkel, he suspected defendant Hurley was proposing that Mr. Kunkel make a

12  personal payment to defendant Hurley.  Mr. Kunkel rubbed his fingers together and

13  looked at defendant Hurley to see if that was his intention.  Defendant Hurley responded

14  by stating "20," which Mr. Kunkel understood to mean $20,000.

15  At that point, Mr. Kunkel asked defendant Hurley how he wanted the payment,

16  and defendant Hurley responded that he wanted Mr. Kunkel to pay off his student loans

17  in small amounts over time.  Mr. Kunkel told defendant Hurley that he did not think that

18  was a good idea.  Defendant Hurley then said he wanted cash.  According to Mr. Kunkel,

19  he was worried that defendant Hurley would not present the signed Form 4549 unless he

20  agreed to make the payment.  As a result, Mr. Kunkel agreed to pay defendant Hurley the

21  $20,000 and suggested meeting at a Starbucks in Seattle, Washington, at 8:00 a.m. on

22  September 16, 2015, to make the payment.  Defendant Hurley agreed, and told Mr.

23  Kunkel not to tell anyone, not even his business partner.

24  According to the activity record in defendant Hurley's examination workpapers,

25  he met with an IRS supervisor on September 14, 2015, and told the supervisor that he had

26  received an agreed Form 4549.   The Activity Record indicates that the case would close

27  by September 18, 2015.  The Activity Record entry for September 15, 2015, reflects that

28

1  defendant Hurley conducted a number of steps to present the case file to his manager for

2  approval, including, among other things: "completed the remaining workpapers and

3  printed to case file," "reconciled time analysis and bound case file," and "submitted

4  physical case file to GM for closure."

5  **Mr. Kunkel Reports Defendant Hurley's Solicitation to Law Enforcement**

6          Contrary to defendant Hurley's admonition not to tell anyone, Mr. Kunkel

7  informed Stephen Round, an employee of a security firm that Mr. Kunkel had previously

8  retained, of defendant Hurley's solicitation.  Mr. Round told Mr. Kunkel that he needed

9  to discuss the matter with an attorney and contact law enforcement.  On the morning of

10  September 15, 2015, Mr. Kunkel's attorney, Robert Chadwell, contacted the U.S.

11  Attorney's Office to report the solicitation.  That afternoon, Mr. Kunkel was interviewed

12  by Assistant United States Attorney Justin Arnold, FBI Special Agent Bruce Reynolds,

13  and TIGTA Special Agent Julie Anderson in the presence of Mr. Chadwell and Jack

14  Guthrie, an associate of Mr. Chadwell.

15  **The September 16, 2015 Payment**

16          After Mr. Kunkel was interviewed in the afternoon of September 15, 2015, he

17  agreed to meet with defendant Hurley at the prearranged time on September 16, 2015

18  under observation by Special Agents.  On September 16, 2015, FBI Special Agents gave

19  $5,000 to Mr. Kunkel provide to defendant Hurley.  Mr. Kunkel secured the money in a

20  manila envelope in the presence of FBI Special Agents.  FBI Special Agents placed an

21  audio recording device on Mr. Kunkel and activated it prior to his meeting with the

22  defendant.

23          Two FBI Special Agents, one of whom was utilizing a video recording device,

24  observed Mr. Kunkel sitting at a table inside the Starbucks located in Seattle,

25  Washington.  At approximately 7:30 a.m., Mr. Kunkel held up the manila envelope

26  containing the $5,000 cash for the Special Agents conducting surveillance to see, and Mr.

27

28  UNITED STATES' TRIAL BRIEF - 7
   *United States v. Hurley*, CR15-336 JCC

1  Kunkel placed the envelope in a newspaper and placed both items on the table in front of
2  him.

3  At approximately 7:51 a.m., Special Agents observed a Honda Accord 4-door
4  sedan, bearing Washington license plate ARE919, pull into the parking lot of the
5  Starbucks.  Defendant Hurley is the registered owner of that vehicle.  At approximately
6  7:53 a.m., Special Agents observed defendant Hurley exit his car and walk into the
7  Starbucks wearing a backpack.  At approximately 7:56 a.m., Special Agents observed
8  defendant Hurley sit down at the table with Mr. Kunkel where they engaged in
9  conversation.

10  At approximately 8:02 a.m., Special Agents observed defendant Hurley and Mr.
11  Kunkel stand up from the table.  As Mr. Kunkel put on his jacket, defendant Hurley sat
12  back down, opened his backpack, took the envelope of money inside the newspaper on
13  the table and placed both items together inside of his backpack.  Defendant Hurley stood
14  up again and both he and Mr. Kunkel departed the Starbucks.  Defendant Hurley and Mr.
15  Kunkel then began smoking cigarettes outside of the entrance to the Starbucks where
16  they engaged in further conversation.

17  At approximately 8:11 a.m., Special Agents observed defendant Hurley walk away
18  from Mr. Kunkel and walk to his car.  Defendant Hurley put the backpack containing the
19  envelope of money inside the trunk of his Honda Accord and drove away.

20  Shortly thereafter, Special Agents debriefed Mr. Kunkel about the meeting.
21  During the debriefing, Mr. Kunkel told the Special Agents that he had told defendant
22  Hurley that he was worried about getting into trouble for making the payment.
23  According to Mr. Kunkel, defendant Hurley replied, in sum and substance, "You're not
24  in trouble.  I brought this up to you.  I'm the one that is going to get into trouble.  You
25  didn't bring it to me.  We're fine.  It's good."

26  After the meeting, Special Agents reviewed the audio recording of the meeting.
27  Large portions of the recording are difficult to hear because of background noise, but the
28  UNITED STATES' TRIAL BRIEF - 8
   *United States v. Hurley*, CR15-336 JCC

recording included the following conversation between Mr. Kunkel and defendant Hurley.  On a portion of the recording, defendant Hurley is heard saying: "I, I finished…I finished closing everything out, got it all wrapped up and stuck it in my manager's box yesterday…late yesterday," and  "She's not in today…which is good…so that means the afternoon manager comes in and reviews in…and that's just rubberstamping it.  So there's no problem there.   It…that's good…it gets forwarded up."

Another portion of the recording includes the following exchange where Mr. Kunkel said, "I gotta split…this is the other part I was gonna tell you, I'll give you 5 [meaning thousand dollars] today, don't freak out on me…I'm gonna give you more. Can you give me until Monday and I'll get you the rest?  Part of me was scared that if I hand you 20k...  I'm like is this guy going to get fucking pulled over and freak out."  On the recording, defendant Hurley replied:  "I'll just throw it in the trunk and no record or nothing."  On the recording, Mr. Kunkel said, "Monday, I'll get you the rest 100%."  . Kunkel and defendant Hurley agreed to meet again at the same Starbucks location on Monday, September 21, 2015, at 8:00 a.m. for Mr. Kunkel to provide the rest of the $20,000.

**The September 21, 2015 Payment**

On September 21, 2015, at approximately 8:00 a.m., Mr. Kunkel met with defendant Hurley inside of Mr. Kunkel's vehicle in the parking lot of the Seattle Starbucks where the two had previously met on September 16, 2015.  An audio recording device was placed on Mr. Kunkel, along with audio and video recording devices that were placed in his vehicle.  All of the devices were activated prior to Mr. Kunkel's meeting with defendant Hurley.  On September 21, 2015, Mr. Kunkel was provided with $15,000 cash by TIGTA Special Agents, which he placed in a manila envelope in the presence of TIGTA Special Agents.

At approximately 7:55 a.m., Special Agents observed defendant Hurley's Honda Accord 4-door sedan bearing Washington license plate ARE919 pull into the parking lot

UNITED STATES' TRIAL BRIEF - 9
*United States v. Hurley*, CR15-336 JCC

1  of the Starbucks.  Defendant Hurley grabbed his backpack and then got inside of Mr.
2  Kunkel's vehicle.

3       The audio and video recording taken inside Mr. Kunkel's car reveals that Mr.
4  Kunkel had placed the manila envelope containing the $15,000 under the passenger seat
5  where defendant Hurley was sitting.  At the outset of the meeting in the car, defendant
6  Hurley and Mr. Kunkel discussed an IRS form concerning paying by the electronic
7  payment system.  Shortly thereafter, Mr. Kunkel told defendant Hurley that he had a
8  friend who owned a dispensary in Everett who was going through an examination.
9  During the discussion, defendant Hurley said, "It's not going to be as kind for him" and
10 "He's going to get railed, dude."  In response, Mr. Kunkel stated, in part, "Hopefully,
11 he's as fortunate to get a guy like you and we'll see" to which defendant Hurley
12 responded, "Get a guy like me?  They don't exist.  Guys like me don't exist."

13      Later, Mr. Kunkel told defendant Hurley, "That's – I put down there under your
14 seat, by the way."  At that point, defendant Hurley reached under the seat, grabbed the
15 manila envelope containing the cash, and placed it inside his backpack.  Immediately
16 thereafter, Mr. Kunkel asked defendant Hurley, "So we're good.  So nothing weird pops
17 up or if it does, can I get ahold of you?"  Defendant Hurley responds by directing Mr.
18 Kunkel to "write [him] snail mail" at defendant Hurley's home address.  Later, Mr.
19 Kunkel again asked, "You think we're going to be okay, though?" and defendant Hurley
20 responded, "I'm 99.99 percent sure we're good.  I mean there's --- there's really no
21 fucking chance of it.  It's already been closed up by a manager.  Got closed out, like, that
22 same day."

23      At approximately, 8:10 a.m., defendant Hurley exited Mr. Kunkel's vehicle
24 carrying a backpack.  Special Agents then arrested the defendant without incident.  In a
25 search incident to arrest, Special Agents searched defendant Hurley and his backpack.
26 Specials Agents located the manila envelope containing $15,000 cash inside of defendant
27 Hurley's backpack.  Special Agents also located four (4) U.S. Twenty Dollar bills inside
28 UNITED STATES' TRIAL BRIEF - 10
   *United States v. Hurley*, CR15-336 JCC

of defendant Hurley's wallet.  Three (3) of the serial numbers for U.S. Twenty Dollar bills matched the serial numbers of the U.S. Twenty Dollar bills paid by Mr. Kunkel to defendant Hurley during the September 16, 2015 bribe payment.

On September 24, 2015, three days after his arrest, defendant Hurley emailed and mailed a resignation letter to Sara DeAnda, his IRS supervisor.  In his resignation letter, defendant Hurley wrote, among other things,

> "It is with a heavy heart, immeasurable reget [sic], and unfathomable remorse that I must resign from the Internal Revenue Service.  My recent actions have no place in the Federal Service and there is no way I could possibly write an apology to express the dissatisfaction and disgust I have within myself.  I have let everyone down in the Seattle office and all across the United States and have brought a cloud of shame to the Internal Revenue Service.  To resign is unquestionably the right thing to do."

## IV.    LEGAL ISSUES

**A.    The United States Need Not Prove that Defendant Hurley Actually Performed the Official Act that Was the Subject of the Bribe**

The bribery statute centers on "taking or agreeing to take money for a promise to act in a certain way."  *United States v. Brewster*, 408 U.S. 501, 526 (1972).  Although the statute requires the government to establish that defendant Hurley agreed to be influenced in the performance of an official act, the statute does not require the government to prove that defendant Hurley actually performed the official act.  As explained by the Supreme Court, "[t]here is no need for the Government to show that appellee fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise."  *Id*. (examining 18 U.S.C. § 201(c)).

Because it is irrelevant whether defendant Hurley performed the official act, it would be improper for the defense to present evidence or argument regarding defendant Hurley's failure to perform the official act.  For example, it would be improper for the defense to present evidence that the bribe did not cause defendant Hurley to alter his

UNITED STATES' TRIAL BRIEF - 11
*United States v. Hurley*, CR15-336 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   conduct, or that defendant Hurley lacked the power to accomplish the official act he

2   promised to Mr. Kunkel.

3        This evidence is barred by Federal Rules of Evidence 402 and 403.  Federal Rule

4   of Evidence 402 provides that evidence which is not relevant is not admissible.  Evidence

5   that neither negates an element of the charges against a defendant nor establishes a

6   defense is not relevant.  Because evidence regarding the performance of the agreed upon

7   official act neither negates an element of the crime of bribery nor establishes a defense,

8   such evidence is not relevant.

9        Even if such evidence were relevant, Federal Rule Evidence 403 would bar its

10   admission because the evidence would confuse the issues, mislead the jury and cause

11   undue delay.  *See United States v. Olano*, 62 F.3d 1180, 1204 (9th Cir. 1995), *cert.*

12   *denied*, 519 U.S. 931 (1996).  The trial court has broad discretion in determining

13   admissibility under Rule 403. *Id.*, 62 F.3d at 1204; *United States v. Moore*, 552 F.2d

14   1068, 1079 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049 (1976).  An area of common

15   exclusion involves attempts to confuse the issues or mislead the jury by introducing

16   evidence of matters that do not establish a defense to the charged crimes. *Olano*,62 F.3d

17   at 1204-05; *United States v. Perkins*, 937 F.2d 1397, 1401 (9th Cir. 1991); *see also*

18   *United States v. Tidwell*, 559 F.2d 262, 266-67 (5th Cir. 1977), *cert. denied*, 435 U.S. 942

19   (1978) (excluding evidence that defendant's manipulation of bank funds was beneficial to

20   bank on grounds of danger of confusion of issues and misleading jury where belief in

21   benefit to bank was not a defense to misapplication of funds).

22   **B.     It Is Not a Defense that the Official Act Was Legal or that Defendant Hurley**
23   **Would Have Undertaken the Official Act Even if Kunkel Had Refused to Pay the**
      **Bribe**
24

25        Pursuant to the Supreme Court's ruling in *Brewster*, it would be improper for the

26   defense to present evidence or argument that the bribe did not cause defendant Hurley to

27   alter his examination work papers or otherwise deviate from standard audit practice.  It is

28   UNITED STATES' TRIAL BRIEF - 12
      *United States v. Hurley*, CR15-336 JCC

not a defense to the crime of bribery that the official act that is the subject of the bribe was actually lawful or even beneficial to the public. *See United States v. Dorri*, 15 F.3d 888, 890 (9th Cir. 1994) (affirming bribery conviction where the jury was instructed that it is "not a defense to the crime of bribery . . . that the demand of something of value was made by the public official to influence an official act which is actually lawful, desirable or even beneficial to the public") (citation omitted).  Nor is it a defense that defendant Hurley would have submitted and defended his audit report even in the absence of the bribe.  *United States v. Quinn*, 359 F.3d 666, 675 (4th Cir. 2004).

In *Quinn*, the defendants challenged their bribery convictions on the ground that the district court gave an instruction that allowed the jury to reach guilty verdicts even when there was evidence that the defendants were merely carrying out their ordinary responsibilities and would have undertaken their official actions irrespective of the bribes.  359 F.3d at 674-75.  The challenged instruction stated, in pertinent part:

> It is not a defense that the official act sought to be influenced would have been done anyway regardless of the fact that the bribe was received or accepted.  That is to say, even if the defendant acted as he or she normally would if the bribe had not been requested, the crime of bribery has still been committed.

359 F.3d at 675.  The Fourth Circuit found the instruction to be appropriate.  The court rejected the defendants' argument because the government does not need to establish that the official act offered in exchange for the bribe was "harmful to the government or inconsistent with the official's legal obligations."  *Id.* (citing *United States v. Miller*, 340 F.2d 421, 424 (4th Cir. 1965).  The court explained that, "[b]y the same reasoning, it does not matter whether the government official would have to change his or her conduct to satisfy the payor's expectations."  *Id.* (footnote omitted).

UNITED STATES' TRIAL BRIEF - 13
*United States v. Hurley*, CR15-336 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.      It Is Not a Defense that Defendant Hurley Lacked Authority to Undertake the Official Act or that He Never Intended to Undertake the Official Act**

As set forth above, the United States anticipates eliciting testimony from Diane Wittman about the role of an IRS revenue agent in the audit process.  Ms. Wittman will testify that revenue agents act relatively autonomously during their audits, and are given discretion to determine whether adjustments to the taxpayers' returns are warranted. While this evidence is admissible to demonstrate what role a revenue agent has in the examination, the United States does not need to prove that defendant Hurley actually had the authority to ensure that Have a Heart would receive favorable treatment during the audit.  Therefore, it would be improper for the defense to present evidence that defendant Hurley, as a revenue agent, lacked the authority to ensure that Have a Heart would receive favorable treatment in his audit.  *Brewster*, 408 U.S. at 526; *United States v. Chen*, 754 F.2d  817, 825 (1985).   Defendant Hurley's lack of authority to guarantee a favorable result is entirely irrelevant because the core issue is whether defendant Hurley agreed to act a certain way in return for the money,  *United States v. Hurley*, 192 F.2d 297, 300 (4th Cir. 1951) ( "[U]nder Section 201, it is immaterial that the briber does not have the power of decision to accomplish the result which the offeror of the bribe desires."); *Krogmann v. United States*, 225 F.2d 220, 225 (6th Cir. 1955) (explaining that Section 201 "is applicable to a situation where the advice and recommendation of the Government employee involved would be influential in securing the decision desired by the persons offering the bribe, even though the employee did not have the authority to make the final decision").

Similarly, it is not a defense that defendant Hurley did not actually intend to be influenced.  "An officer can act corruptly without intending to be influenced; the officer need only 'solicit or receive the money on the representation that the money is for the purpose of influencing his performance of some official act.'" *United States v. Peleti*, 576 F.3d 377, 382 (7th Cir. 2009) (quoting *United States v. Arroyo*, 581 F.2d 649, 652 (7th

UNITED STATES' TRIAL BRIEF - 14
*United States v. Hurley*, CR15-336 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Cir.1978).   The statutory requirement that the public official was influenced or induced to act in a certain way does not describe the official's subjective intent; instead, it describes the intention conveyed to the briber.  Thus, the statute is violated "by giving false promises of assistance to people he believed were offering him money to influence his official actions."  *United States v. Myers*, 692 F.2d 823, 842 (2d Cir. 1982) (footnote omitted).

### D.   Defendant Hurley Still Committed Bribery By Accepting Payment After the Official Act Was Completed

As indicated above, the government will establish at trial that defendant Hurley's official act was the submission and defense of his audit examination work papers.  The government will show that defendant Hurley solicited, and Mr. Kunkel agreed to pay, the bribe on September 11, 2015.  Defendant Hurley subsequently submitted his audit work papers on September 15, 2015.  Defendant Hurley did not receive payment for the bribe until September 16 and September 21, 2015.

There is nothing in the bribery statute that requires a bribery payment be made *before* the official act is taken.  To the contrary, courts have routinely found that statute permits a conviction for bribery where the payment of the bribe is made *after* the official act is undertaken. *See United States v. Campbell*, 684 F.2d 141, 148 (D.C. Cir. 1982) ("The bribery statute proscribes offers and promises of bribes as well as the giving of bribes, and it is only logical that in certain situations the bribe will not actually be conveyed until the act is done.") (footnote omitted); *United States v. Jennings*, 160 F.3e 1006, 1014 (4th Cir. 1998) (explaining that bribes can be conveyed after the official act is completed) (citing *Campbell*, 684 F.2d at 148).

In *United States v. Gatling*, 96 F.3d 1511 (D.C. Cir. 1996), for example, one of the defendants challenged whether there was sufficient evidence for the jury to find she accepted a bribe rather than a gratuity.  96 F.3d at 1518.  In finding that there was sufficient evidence of bribery, the D.C. Circuit noted that the fact that the defendant had

UNITED STATES' TRIAL BRIEF - 15
*United States v. Hurley*, CR15-336 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

agreed to undertake the official act before she was offered the bribe was not determinative. The court explained, "[t]iming is not determinative of whether a payment constitutes a bribe or a gratuity, since '[t]he statute proscribes offers and promises of bribes as well as the giving of bribes, and it is only logical that in certain situations the bribe will not actually be conveyed until the act is done.'" (quoting *Campbell*, 684 F.2d at 148). Consistent with *Gatling* and the above cases, it is not a defense that defendant Hurley received the money after he submitted his audit examination work papers.

**E.     Defendant Hurley's Assertion of an Entrapment Defense**

Defendant Hurley has indicated that he will assert an entrapment defense at trial. The government wishes to alert the Court to several substantive issues associated with the assertion of this defense.

As a preliminary matter, to date, the defense has failed to outline any facts that would support the giving of an entrapment instruction. In order to receive an instruction on the entrapment defense, defendant Hurley must assert sufficient facts alleging that he was (1) induced to commit the crime by a government agent; and (2) not otherwise predisposed to commit the crime. *See United States v. Spentz*, 653 F.3d 815, 818 (9th Cir. 2011) (citing *United States v. Barry*, 814 F.2d 1400, 1401 (9th Cir. 1987)). The evidence of inducement and lack of predisposition may be slight, *Spentz*, 653 F.3d at 818, but "[a] defendant is not entitled to have the issue of entrapment submitted to the jury in the absence of evidence" demonstrating both elements. *United States v. Rhodes*, 713 F.2d 463, 467 (9th Cir. 1983).

Inducement is the threshold issue in any entrapment defense. The law is clear that any inducement must be conducted by the government or its agent. *Spentz,* at 818. Typically, "inducement can be any *government conduct* creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based

UNITED STATES' TRIAL BRIEF - 16
*United States v. Hurley*, CR15-336 JCC

1   on need sympathy or friendship." *United States v. Williams*, 547 F.3d 1187, 1197 (9th

2   Cir. 2008) (citing *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994) (emphasis

3   added)).

4        Defendant Hurley has not -- and cannot -- identify any evidence that there was

5   inducement by a government agent for two reasons.  First, there is no indication that there

6   was any "inducement" in this case.  Defendant Hurley was not coerced, harassed, or

7   promised a non-criminal reward.  It is important to note that the $20,000 paid to

8   defendant Hurley cannot constitute the "inducement" needed to establish the entrapment

9   defense because the money is the "prototypical criminal motivation for" the crime of

10  bribery.  *Spentz*, 653 F.3d at 819.  As explained by the Ninth Circuit:

11          The entrapment defense is meant to prevent the government from

12          convincing someone who will not be persuaded by criminal motivations to
            commit a crime. *See Sherman*, 356 U.S. at 372, 78 S.Ct. 819 ("To

13          determine whether entrapment has been established, a line must be drawn
            between the trap for the unwary innocent and the trap for the unwary

14          criminal.").  When the motivation presented by the government is the

15          typical benefit from engaging in the proposed criminal act, there is no
            reason to be concerned that an innocent person is being entrapped

16

17  *Id.* (footnote omitted).

18        Second, and equally as important, defendant Hurley cannot establish that a

19  government agent induced the commission of the offense.  When defendant Hurley

20  solicited the payment or agreed to receive the payment from Mr. Kunkel on September

21  11, 2015, Mr. Kunkel was not operating at the direction of law enforcement in any

22  fashion.  In fact, Mr. Kunkel did not contact law enforcement until *after* September 11,

23  2015.  The involvement of law enforcement in the subsequent meetings is immaterial

24  because the audio and video recordings that took place at the direction of law

25  enforcement were made *after* defendant Hurley had solicited or agreed to receive a bribe.

26        Even if defendant could show government inducement, there is substantial

27  evidence that defendant Hurley was predisposed to commit the crime.  The predisposition

28  UNITED STATES' TRIAL BRIEF - 17
    *United States v. Hurley*, CR15-336 JCC

inquiry focuses upon whether the defendant "was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 63 (1988).  Predisposition may exist even in the absence of prior criminal involvement: "the ready commission of the criminal act," such as where a defendant promptly accepts an undercover agent's offer of an opportunity to buy or sell drugs, may itself establish predisposition.  *Jacobson v. United States*, 503 U.S. 540, 548 (1992).

In the Ninth Circuit, a jury must consider five factors to determine predisposition: (1) the character or reputation of the defendant, including any prior criminal record; (2) whether the government initially made the suggestion of criminal activity; (3) whether the defendant engaged in criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense that was overcome by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion applied by the government. *Williams*, 547 F.3d at 1198.  No single factor is dispositive, but "the defendant's reluctance to engage in criminal activity is the most important." *Id.* (quoting *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir. 1986).

The United States does not believe that defendant Hurley can establish that he lacked predisposition to commit the offense of bribery.  First, as discussed above, the government did not induce the defendant's conduct, and therefore, the United States believes that defendant Hurley cannot show any evidence supporting factors 2, 4, and 5 above.  Second, the defendant's character and the fact that he engaged in the criminal activity for profit also weigh against the defendant's efforts to show lack of predisposition.  Specifically, the defendant engaged in the criminal activity in order to enrich himself by soliciting and receiving $20,000 in cash.

If defendant Hurley does, in fact, assert an entrapment defense at trial, the United States intends to present evidence that he was predisposed to commit the crime, including evidence of defendant Hurley's character and reputation.  If defendant Hurley makes any

UNITED STATES' TRIAL BRIEF - 18
*United States v. Hurley*, CR15-336 JCC

statements regarding entrapment in the defense's opening statement or through evidence elicited through cross-examination of the government's witnesses, he will have opened the door to such evidence.[1]

      If defendant Hurley opens the door to the entrapment defense, the United States intends to introduce the following predisposition evidence:  (1) defendant Hurley abused his position as an IRS agent by engaging in the unauthorized access of taxpayer data on the IRS's Integrated Data Retrieval System on a number of occasions and was notified that he may suffer discipline as a result of that violation; (2) defendant Hurley was sympathetic to the marijuana industry as demonstrated by his relationship with, and statements about, people involved in the industry; and, (3) defendant Hurley was predisposed to violate the IRS' code of ethics as evidenced by an incident where he left work to watch a World Cup match at a bar, and when Dianne Whittman confronted about his absence, defendant Hurley fabricated a story about having to rush to the hospital.  The United States will also argue that the prompt manner in which defendant Hurley received the money -- as depicted on the audio and video records -- shows that he was predisposed to commit the crime.

      It should be noted, however, that the mere fact that defendant Hurley puts the entrapment defense into play at trial does not entitle him to an entrapment instruction. Accordingly, defendant Hurley may create a situation where he has opened the door to the admission of character and reputation evidence but is not entitled to have the jury instructed on the defense.

**F.**    **Reference to the Penalties that Defendant Hurley Faces**

---

[1] If defendant Hurley opens the door to the entrapment defense late in the government's case-in-chief but does not present a defense case, the United States requests the opportunity to recall witnesses to present evidence regarding the defense.

UNITED STATES' TRIAL BRIEF - 19
*United States v. Hurley*, CR15-336 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It would be improper for the defense to make any reference to defendant Hurley's potential sentence during all phases of the trial (including jury selection, opening statements, examination of witnesses, including the defendant if he elects to testify, and summation). References to penalties could be as overt as "You understand the defendant is facing decades in prison if convicted," or more subtle, such as "the defendant is facing a lot of time," "this case has serious consequences for the defendant," "the defendant's liberty is at stake in this trial," or "your decision will have consequences for a long time to come." Or the references could relate to the differences between the statutory penalties for bribery and its lesser included offense, gratuity. All such references are improper.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992); *see also Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"); *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (trial judge properly instructed jury that the "punishment provided by law for the offenses charged in the indictment are matters exclusively within the province of the court. It should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused"). Information about penalties draws the attention of the jury away from its chief function as the trier-of-fact, opens the door to compromise verdicts, and confuses the issues to be decided. *United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995). Simply put, "it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991); *see also* 9th Cir. Model Crim. Jury Instr., § 7.4 (2010) ("The punishment provided by law for this crime is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the defendant[s] beyond a reasonable doubt."). Accordingly, it

UNITED STATES' TRIAL BRIEF - 20
*United States v. Hurley*, CR15-336 JCC

1  would be improper for the defense to make any reference to defendant Hurley's potential

2  punishment in the presence of the jury at any point in the proceedings.

3  ## V.  EVIDENTIARY ISSUES

4  ## A.  Statements of Defendant

5  The United States intends to introduce evidence regarding statements made by the

6  defendant, including the statements made by defendant Hurley: (1) to Mr. Kunkel

7  throughout the examination, and on September 11, 16, and 21, 2015: (2) on IRS forms

8  completed by defendant Hurley during the examination, and (3) to the IRS in his

9  resignation letter.  A defendant's own statements are admissible, non-hearsay admissions

10  of a party-opponent when offered into evidence by the United States.  *See* Fed. R. Evid.

11  801(d)(2)(A).[2]

12  The United States may offer all, some, or none of a defendant's statements at trial

13  under Rule 801(d)(2).  A defendant, however, cannot use this rule to offer his own prior

14  out-of-court statements.  Rule 801(d)(2) is unavailable to the defendant in this case, since

15  he would be the proponent of the evidence and, where he seeks to introduce it, it is not

16  offered against him.  *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *United*

17  *States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).  As a result, the hearsay rule

18  would bar the defendant from introducing his own prior statements.  *United States v.*

19  *Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007).   If the defendant wants to tell his side of

20  the story, he must take the stand and testify under oath and be subject to cross-

21  examination.  Indeed, even where the United States elicits the inculpatory portion of a

22  defendant's statement from a witness, the defendant is not entitled to elicit the

23

24  ─────────────────

[2] The government may also offer IRS documents related to defendant Hurley's audit and

25  his training as an IRS agent as public records under Federal Rule of Evidence 803(8).

26  Diane Wittman and Sara De Anda, both experienced IRS employees with knowledge of

27  the IRS' document retention policies, will authenticate the documents as documents

generated or maintained by the IRS.

28

UNITED STATES' TRIAL BRIEF - 21
*United States v. Hurley*, CR15-336 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   exculpatory portion on cross-examination. *Ortega*, 203 F.3d at 682. The rule of
2   completeness (Fed. R. Evid. 106) has no place in this analysis since it applies only to
3   written or recorded statements. *Id.*

4   Furthermore, admission of the defendant's statement to the IRS after his arrest will
5   not violate his constitutional rights. The Fifth Amendment to the United States
6   Constitution protects individuals from being compelled to testify against themselves. *See*
7   U.S. Const. Amend. V. Accordingly, only voluntary statements and confessions may be
8   admitted at trial. *See* 18 U.S.C. §3501; *United States v. Rowe*, 92 F.3d 928 (9th
9   Cir.1997). To determine whether a confession or statement is voluntary, the trial court
10  must analyze the totality of the circumstances. *United States v. Crespo de Llano*, 838
11  F.2d 1006, 1015 (9th Cir. 1987) (citing *Haynes v. Washington*, 373 U.S. 503, 513 14
12  (1963)). The standard of proof that the statements were voluntarily made is by a
13  preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 482 84 (1972); *Crespo*
14  *de Llano*, 838 F.2d at 1015.

15  There appears to be no dispute that defendant Hurley's statements to the IRS in his
16  resignation letter do not implicate the Fifth Amendment. First, his statements were made
17  to his supervisor at the IRS, not to law enforcement. Second, the statements were made
18  voluntarily, not under questioning from either the IRS or law enforcement.

19  **B.    Statements Offered for a Non-Hearsay Purpose**

20  A statement is hearsay if it is (1) an assertion that (2) is made out of court and (3)
21  is offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Many out
22  of court statements are not hearsay because they either are not assertions, or they are not
23  offered to prove the truth of the matter asserted. *United States v. Oguns*, 921 F.2d 442,
24  449 (2nd Cir. 1990) (questions are not assertions and are thus not hearsay). Furthermore,
25  many statements that meet the definition of hearsay are admissible under one or more of
26  the many exceptions to the hearsay rule.

27
28  UNITED STATES' TRIAL BRIEF - 22
    *United States v. Hurley*, CR15-336 JCC

1    In this case, the United States may offer out of court statements not to prove the
2    truth of the matters asserted, but merely to give context to the defendant's statements.
3    Therefore, the statements would not constitute "hearsay" within the definition of Rule
4    801. *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995) (informant's part of
5    conversation with agent was not hearsay, because it was offered for context and not to
6    prove the truth of the informant's statements).  Specifically, the statements made by Mr.
7    Kunkel to the defendant during the examination and in the audio and video recordings are
8    not hearsay, because they are not offered for their truth, but rather to provide context for
9    the statements made by the defendant.

10   **C.    Audio and Video Recordings**

11   In its case-in-chief, the United States intends to offer an audio recording of the
12   meeting between Mr. Kunkel and defendant Hurley on September 16, 2015, and an audio
13   and video recording of the meeting on September 21, 2015.

14   With respect to the September 16th audio recording, the United States intends to
15   offer the portion of the audio recording that spans from shortly before defendant Hurley
16   arrived at the Starbucks to the end of the conversation, a total of approximately sixteen
17   minutes.  The United States does not believe that the other portions of the over hour long
18   audio recording are relevant.  While the United States intends to offer the sixteen minute
19   portion of the September 16th recording described above into evidence, at trial, the
20   United States intends to play only the portion of the recording where Mr. Kunkel and the
21   defendant engaged in conversation outside the Starbucks since the conversation inside the
22   Starbucks is mostly inaudible.  Furthermore, to aid the jury in understanding the
23   September 16th audio recording, the United States intends to present a transcript of the
24   recording on the courtroom screens as the recording is played.

25   Similarly, with respect to the September 21st audio and video recording, the
26   United States intends to offer only the portion of the recording that reflects the meeting

27

28   UNITED STATES' TRIAL BRIEF - 23
     *United States v. Hurley*, CR15-336 JCC

between the defendant and Mr. Kunkel inside Mr. Kunkel's vehicle as the remainder of the recording is irrelevant.

The United States anticipates offering the audio and video recordings of the interactions between Mr. Kunkel and defendant Hurley through the testimony of FBI Special Agent Mark Nakatsu and TIGTA Special Agent Julie Anderson.  Special Agents Nakatsu and Anderson can authenticate the video and audio recordings because they were present when Mr. Kunkel was outfitted with the recording devices.  Additionally, they are familiar with the voices of Mr. Kunkel and defendant Hurley.  Both Special Agents have personally reviewed the audio and video recordings in preparation for trial and confirmed that the voices on the audio and video recordings include Mr. Kunkel's and defendant Hurley's voices.  *See* Fed. R. Evid. 901(b)(5).  Special Agent Anderson will also testify that the September 21st video is of Mr. Kunkel and the defendant.  With respect to the transcript of the September 16th recording, Special Agent Nakatsu has personally reviewed the transcript and confirmed that it accurately reflects the speakers on the recording.

Both of the recorded statements are relevant and admissible.  As noted above, defendant Hurley's statements are admissible because they are statements of a party opponent.  *See* Fed. R. Evid. 801(d)(2)(A).  Mr. Kunkel's recorded statements are admissible as non-hearsay because they are not being offered for the truth, but to provide context to defendant Hurley's statements.  *See United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985).

**D.      The IRS's Notification that Defendant Hurley may be Terminated or Otherwise Disciplined is Admissible**

At trial, the United States intends to offer evidence of the IRS's July 1, 2015 notification to defendant Hurley that he may be removed from the IRS or otherwise disciplined.  This evidence is admissible under Rule 404(b) of the Federal Rules of Evidence to prove motive.

UNITED STATES' TRIAL BRIEF - 24
*United States v. Hurley*, CR15-336 JCC

### E.     Mr. Kunkel's Attorneys as Witnesses

Robert Chadwell, Mr. Kunkel's attorney, has notified the United States that defendant Hurley may seek to call Mr. Chadwell, and his associate, Jack Guthrie, as witnesses at trial.  The United States is aware of the defendant's right to call witnesses to present evidence at trial.  However, the United States feels compelled to bring this to the Court's attention because Mr. Chadwell has informed the United States that his client has not agreed to waive attorney-client privilege with respect to communications between Mr. Kunkel and Mr. Chadwell or Mr. Guthrie.  Therefore, the United States believes that defense counsel should be prohibited from asking any questions that may encroach on the privilege.

### F.     Exclusion of Witnesses

Pursuant to Rule 615 of the Federal Rules of Evidence, the government respectfully requests that witnesses be excluded from the courtroom, with the exception of FBI Special Agent Mark Nakatsu and TIGTA Special Agent Julie Anderson, who are the case agents and who should be permitted to sit at counsel table.  *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989).

///

///

///

///

///

///

///

UNITED STATES' TRIAL BRIEF - 25
*United States v. Hurley*, CR15-336 JCC

# VI.   <u>CONCLUSION</u>

The United States is not aware of other legal issues that are likely to arise during the course of this trial.  If other issues do arise, the government requests the opportunity to address those issues by way of a supplemental brief or briefs.

DATED: this 29th day of January, 2016.

ANNETTE L. HAYES
United States Attorney

*/s/ Justin W. Arnold*
JUSTIN W. ARNOLD
FRANCIS FRANZE-NAKAMURA
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington  98101
Phone: 206-553-5326
E-mail: justin.arnold@usdoj.gov

UNITED STATES' TRIAL BRIEF - 26
*United States v. Hurley*, CR15-336 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2016, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).


*s/ Dru Mercer*
DRU MERCER
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: 206-553-7970
Fax: 206-553-2502
Email: dru.mercer@usdoj.gov

UNITED STATES' TRIAL BRIEF - 27
*United States v. Hurley*, CR15-336 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970