The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>V.<br><br>PAUL G. HURLEY<br><br>Defendant. | No. CR15-336-JCC<br><br>**DEFENDANT'S TRIAL BRIEF** |

Comes now the Defendant, Paul G. Hurley, by and through his attorneys, John Henry Browne and Michael T. Lee, and submits the following Trial Brief to familiarize the Court with the factual background and legal issues of the case. The defendant reserves the right to supplement this Trial Brief before and/or during the trial should any factual or legal issues arise that require additional briefing. Trial is set for February 8, 2016, at 9:30 a.m.

**I.    Introduction**

The Government charged Mr. Hurley by Indictment with one count of Soliciting and Agreeing to Receive a Bribe by a Public Official, and two counts of Receiving a Bride by a Public Official, in violation of Title 18 United States Code, Section 201(b)(2).

DEFENDANT'S TRIAL BRIEF 1

Mr. Hurley has entered and maintains a plea of not guilty. The evidence at trial will establish (1) the alleged bribe did not "influence the performance of an official act," and (2) the Government entrapped the Defendant who would not have committed the alleged crime but for the Government's inducement.

## II. Factual Background

Paul G. Hurley is a former agent for the Internal Revenue Service (IRS). His duties as a revenue agent were to conduct examinations of taxpayers' tax filings to determine whether the taxpayer had accurately reported and paid their IRS tax liability. He began working as an IRS agent in June of 2009 and voluntarily resigned in September of 2015 in wake of these allegations. Mr. Hurley is also an inactive member of the Washington State Bar, admitted in 2006.

In July of 2015, the IRS ordered Mr. Hurley to conduct an audit of a local marijuana business, "Have a Heart." Ryan Kunkel, the Government's key witness in this case, owns and operates Have a Heart. Notwithstanding the fact Mr. Kunkel's business is illegal under federal law, the Government reportedly offered Mr. Kunkel no leniency or immunity from his own prosecution. Mr. Kunkel also reportedly worked as a DEA informant from March 2005 through March 2006. The extent and nature of his prior DEA involvement is unclear but may be explored during cross examination.

On July 6, 2015, Mr. Hurley mailed to Mr. Kunkel a signed, official notice of audit to examine Have a Heart's federal tax returns from 2013. On or about July 13, 2015, Mr. Kunkel called Mr. Hurley and acknowledged receipt of the audit notice. Mr. Hurley later informed Mr. Kunkel that he intended to expand the temporal scope of the audit to include tax returns for 2014.

The official audit process required several in-person meetings. On July 29, 2015, Mr. Hurley met with Mr. Kunkel at the Have a Heart office on Aurora Avenue in Seattle. During the initial interview, Mr. Kunkel insisted that he was very conservation with his standard deductions and was "spot on" with his revenue. He further insisted that Mr. Hurley would find no issues with his tax returns. Thereafter the parties met in person to continue the audit examination on: August 6, 2015, September 9 and 11, 2015.

During the last audit closing conference held September 11, 2015, Mr. Hurley presented Mr. Kunkel with the final audit paperwork (Form 4549) and explained the

DEFENDANT'S TRIAL BRIEF 2

LAW OFFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
(206) 388-0777 • FAX: (206) 388-0780

adjustments. Both Mr. Kunkel and Mr. Hurley signed the completed form, which Mr. Hurley then submitted to his supervisor on or about September 15, 2015. Mr. Hurley also supplied Mr. Kunkel with a second, signed original report for his records. Mr. Hurley undertook no further action on this audit and made no adjustments or edits to his final report. During the meeting on September 11, Mr. Kunkel complained that he did not have enough money to satisfy his tax liabilities. Notably, for the 2014 tax year, Mr. Kunkel owed roughly $90,000 in additional, previously unreported, tax liabilities.  Curiously, Mr. Kunkel also reported that he would be "going out of business as of 09/15/15 due to WA State law terminating all medical marijuana dispensaries licenses."

From here, the parties submit diametrically differing accounts of what had transpired at the final audit meeting. The Government claims during the September 11, 2015 meeting Mr. Hurley asked Mr. Kunkel a question "off the record." The Government alleges Mr. Hurley complained about his own financial situation and expressed dissatisfaction with his job at the IRS. Moreover, the Government claims Mr. Hurley gestured by rubbing his fingers together, which Mr. Kunkel reportedly interpreted as soliciting a personal payment to Mr. Hurley to reflect additional tax liabilities Mr. Hurley allegedly had saved Have a Heart during the audit process. Specifically, the Government alleges Mr. Hurley solicited a bribe for $20,000. Mr. Hurley denies soliciting any bribe from Mr. Kunkel. Rather, should Mr. Hurley testify at trial, he will assert Mr. Kunkel offered him a job to perform accounting services for Mr. Kunkel's marijuana business and that the $20,000 payment played no role whatsoever in the performance of his official duties.

Significantly, on the morning of September 15, 2015, Mr. Kunkel met with his attorneys, Robert Chadwell and Jack Gutherie, who then contacted the U.S. Attorney's Office.  Curiously, that afternoon Mr. Kunkel and his attorneys met with AUSA Justin Arnold, FBI Special Agent Bruce Reynolds, and TIGTA Special Agent Julie Anderson. Given that no attorney-client privilege existed during this meeting, defense counsel subpoenaed Mr. Chadwell and Mr. Gutherie to testify at trial about the nature and substance of that meeting along with additional information that may support an entrapment defense. Nevertheless, during the meeting Attorney Chadwell authorized FBI agents to have direct contact with Mr. Kunkel for "operational planning purposes."

DEFENDANT'S TRIAL BRIEF 3

LAW OFFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
(206) 388-0777 • FAX: (206) 388-0780

Attorney Chadwell also facilitated an interview between the Government and Mr. Kunkel's security guard. During several subsequent telephone calls between Special Agent Reynolds and Mr. Kunkel, SA Reynolds discussed "operational details, including pre-brief and meeting locations, as well as a general scenario." Mr. Kunkel reportedly asked for a cooperation letter for his assistance; SA Reynolds advised Mr. Kunkel he could not make any such promises or guarantees.

The following morning, September 16, 2015, FBI arranged to conduct surveillance of a meeting between Mr. Kunkel and Mr. Hurley. During this meeting, Mr. Hurley made specific reference to the job Mr. Kunkel had previously offered Mr. Hurley. Mr. Kunkel subsequently provided Mr. Hurley an envelope that contained $5,000 in pre-marked bills and arranged to meet Mr. Hurley the following Monday at the same location to transfer an additional $15,000. FBI agents debriefed Mr. Kunkel following this meeting. On September 21, 2015, Mr. Hurley and Mr. Kunkel met again under FBI surveillance. There, Mr. Kunkel gave Mr. Hurley an envelope containing $15,000 in pre-marked bills. Following the meeting, FBI agents arrested Mr. Hurley without incident.

The Government's theory of this case is Mr. Hurley solicited a bride in the amount of $20,000 in exchange for saving Have a Heart nearly one million dollars in tax liabilities. Significantly, however, the IRS never conducted a second audit of Have a Heart to review Mr. Hurley's assessment. Moreover, TIGTA Special Agent Julie Anderson interviewed Mr. Hurley's supervisor Sarah De Anda, along with Sarah's supervisor, who both reported and agreed "the IRS cannot give any kind of estimate on what Mr. Kunkel should have legitimately owed on his IRS audit."

### III. 18 U.S.C. § 201(b)(2): Public Official Who Receives a Bribe

This statute punishes the receipt or solicitation by a public official or a person selected to be a public official. There are three statutory elements: (1) the defendant must be a public official or acting on behalf of the United States; (2) the defendant demanded, sought or received something of value; and (3) the defendant demanded, sought or received the item of value corruptly *in return for being influenced in the performance of an official act.* United States v. Dorri, 15 F.3d 888 (9th Cir. 1994) (emphasis added). In the present case, the alleged bride was not solicited or accepted until after Mr. Hurley had completed his final audit. Thus, the Government cannot meet its burden of proof that Mr.

DEFENDANT'S TRIAL BRIEF 4

Hurley received the alleged bride in "return for being influence in the performance of an official act." To be sure, Mr. Hurley completed his final audit on September 11, 2015. Both Mr. Hurley and Mr. Kunkel signed the completed Form 4549 that day; Mr. Hurley took no further action or made any modifications to the audit other than submitting the final report to his supervisor. Given Mr. Hurley completed his "official act" before any allegation of soliciting and/or receiving a bribe, the alleged bribe certainly could not have influenced his official act of conducting the audit.

IV.   **The Government Entrapped Mr. Hurley**

An entrapment defense is available where a government agent induces the defendant to commit a crime. United States v. Thomas, 134 F.3d 975, 980 (9th Cir. 1998). The defendant must produce some evidence that he was: (1) induced to commit the crime by a government agent; and (2) not otherwise predisposed to commit the crime. Mathews v. United States, 485 U.S. 58, 62-63 (1988). Inducement generally is defined as "solicitation *plus* some overreaching or improper conduct on the part of the government." United States v. Hsu, 364 F.3d 192, 200 (4th Cir. 2004) (emphasis in original). See also United States v. Poehlman, 217 F.3d 692, 702-03 (defining inducement as "anything that materially alters the balance of risks and rewards bearing on the defendant's decision whether to commit the offense, so as to increase the likelihood that he will engage in the particular criminal conduct"). The second element of entrapment is predisposition, which is defined generally as "a defendant's inclination to engage in the illegal activity for which he has been charged, i.e., that he is ready and willing to commit the crime." United States v. LaRizza, 72 F.3d 775, 778 (9th Cir. 1995). Predisposition must be measured before any initial exposure to governmental suggestion, rather than at the time of the offense. United States v. Brooks, 215 F.3d 842, 846 (8th Cir. 2000). Predisposition is not limited to crimes specifically contemplated by the defendant, but also encompass decisions to commit crimes that are the product of the defendant's own preference and not the product of government persuasion. United States v. Ramos, 462 F.3d 329, 334-35 (4th Cir. 2006).

The Ninth Circuit employs a five factor predisposition test which directs the fact finder to consider: (1) the character or reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant

DEFENDANT'S TRIAL BRIEF 5

LAW OFFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
(206) 388-0777 • FAX: (206) 388-0780

engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement. United States v. Gurolla, 333 F.3d 944, 955 (9th Cir. 2003). The defendant bears the initial burden of production; the evidence of inducement and lack of predisposition may be slight. United States v. Spentz, 653 F.3d 815, 818 (9th Cir. 2011). Entrapment is generally a jury question.  As such, a jury instruction must be given if sufficient evidence of entrapment is presented, even if entrapment is inconsistent with another defense being offered by the defendant and irrespective of whether the defendant concedes the elements of the crime. Mathews, 485 U.S. at 62.

Here, more than sufficient facts support a jury instruction on entrapment. First, testimony at trial will show Mr. Kunkel initiated the alleged bribe, not Mr. Hurley. Likewise, Mr. Kunkel became a government actor when he offered to assist the FBI and the U.S. Attorney's Office in arranging to solicit a bride from Mr. Hurley. To be sure, during the meeting between agents of the FBI and TIGTA, AUSA Justin Arnold, Attorneys Chadwell and Gutherie, and Mr. Kunkel, the Government orchestrated every detail regarding the transactions between Mr. Hurley and Mr. Kunkel that occurred on September 15 and September 21, 2015. Mr. Hurley acceptance of the cash payment was the product and direct result of improper government persuasion.

**V.     Motions in Limine**

    1.     Motion to Exclude Government Exhibit 15

Per its Exhibit List, the Government intends to introduce a photograph of a stun gun allegedly possessed by Mr. Hurley. This evidence should be excluded under Federal Rules of Evidence 401, 402 and 403.  Under FRE 401, "relevant evidence" is defined as evidence that (a) has any tendency to make a fact more or less probable that it would be without the evidence; and (b) the fact is of consequence in determining the action. Evidence that is not relevant is inadmissible. FRE 402. Here, defense counsel is unable to fathom how a photograph of a stun gun is probative to determining any issue in this case. Moreover, should the Court find some probative value in the photograph, FRE 403 authorizes the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the

DEFENDANT'S TRIAL BRIEF 6

LAW OFFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
(206) 388-0777 • FAX: (206) 388-0780

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Here, parading a photograph of a stun gun creates a very serious risk of igniting a purely emotional response from the jury and unfairly prejudices Mr. Hurley's ability to obtain a fair trial. As such, this evidence should be excluded.

2. Motion to Exclude IRS Disciplinary Notices

The Government intends to offer into evidence an IRS letter dated July 1, 2015 advising Mr. Hurley that he may be removed from employment or otherwise disciplined by the IRS. The Government claims this letter proves motive.  The Court should exclude the letter as inadmissible hearsay, or otherwise excluded by FRE 403. A statement is hearsay if it is an assertion that is made out of court and is offered to prove the truth of the matter asserted. FRE 801(c). Here, the IRS letter is an out of court statement offered only to prove the truth of the matter asserted: that Mr. Hurley could be terminated or otherwise disciplined by the IRS.

Likewise the Government intends to offer evidence that Mr. Hurley engaged in the unauthorized access of taxpayer data on the IRS's Integrated Data Retrieval System "on a number of occasions" and, on a separate date, left work to watch World Cup soccer at a bar. This evidence should be excluded. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait. FRE 404(a)(1). The Government should not be allowed in its case in chief to introduce evidence of Mr. Hurley's prior bad acts to suggest he acted in conformity with that character trait on this occasion. As such, the foregoing evidence should be excluded.

3. Exclusion of Witnesses

The defendant agrees with the Government that, pursuant to Rule 615, witnesses be excluded from the courtroom.  However, the Government requests an exception for case agents FBI Special Agent Mark Nakatsu and TIGTA Special Agent Julie Anderson. The Defendant asks the court limit the Government's request to one case agent: either SA Nakatsu or SA Anderson may sit at counsel table – not both.

DEFENDANT'S TRIAL BRIEF 7

LAW OFFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
(206) 388-0777 • FAX: (206) 388-0780

## VI. Conclusion

The Defendant submits the foregoing Trial Brief to familiarize this Court with the factual background and legal issues of the case. The defendant reserves the right to supplement this Trial Brief before and/or during the trial should any factual or legal issues arise that require additional briefing.

DATED this 1st day of February, 2016.

/s/ *Michael T. Lee*
MICHAEL T. LEE
JOHN HENRY BROWNE
Attorneys for Paul G. Hurley
108 South Washington Street, Ste 200
Seattle, Washington 98104
Phone: 206.388.0777
Email: johnhenry@jhblawyer.com
michael@jhblawyer.com

DEFENDANT'S TRIAL BRIEF 8

LAW OFFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
(206) 388-0777 • FAX: (206) 388-0780

CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the US Government.

                                                     /s/ Michael T. Lee
                                                  MICHAEL T. LEE
                                       Attorney for Paul G. Hurley
                        108 South Washington Street, Ste 200
                                Seattle, Washington 98104
                                     Phone: 206.388.0777
                              Email: michael@jhblawyer.com

DEFENDANT'S TRIAL BRIEF 9

LAW OFFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
(206) 388-0777 • FAX: (206) 388-0780